805 P.2d 495

**In the Matter of the Suspension of the Driver's License of Delbert BEEM.**

**Delbert BEEM, Petitioner–Appellant–Respondent on appeal,**

v.

**STATE of Idaho, Respondent–Appellant on appeal.**

**No. 18412.**

Court of Appeals of Idaho.

Feb. 6, 1991.

Jim Jones, Atty. Gen., Jack B. Haycock, Deputy Atty. Gen., Boise, for appellant. Jack B. Haycock argued.

Randy Stoker, Twin Falls, for respondent.

WALTERS, Chief Judge.

This is an appeal by the state from a decision of the district court reversing an order entered by a magistrate for the suspension of Delbert Beem's license to drive. The magistrate suspended Beem's license for 120 days under I.C. § 18–8002 upon proof that Beem had refused to submit to an alcohol concentration test when he was arrested by an officer for DUI. On appeal, the district court reversed the magistrate's order on the ground that the statute required suspension for a period of 180 days and that the officer had misinformed Beem of the consequences for refusing to take the test by advising him that his license would be suspended for 120 days. We affirm the district court's order.

Prior to 1987, I.C. § 18–8002(4)(b) provided that a driver's license would be suspended for 120 days if the driver refused to take an alcohol concentration test requested by a police officer who had reasonable cause to believe the driver was operating his or her vehicle while under the influence of alcohol. In 1987, the period of suspension was increased to 180 days by the legislature. *See* 1987 Idaho Sess. Laws, ch. 122, sec. 1, p. 247.

Delbert Beem was arrested on February 8, 1989, for allegedly driving his vehicle while under the influence. At the time of his arrest, the officer requested that Beem submit to a test to determine Beem's bodily alcohol content. Unknowingly utilizing an outdated information form, the officer advised Beem that if he did not submit to the test his driving privileges could be suspended for 120 days for refusing to take the test. Beem refused to submit to the test. He timely demanded a hearing before a magistrate concerning the suspension of his license. The foregoing facts leading to the proposed suspension were presented to the magistrate by stipulation. Following the hearing, the magistrate determined that Beem's driving privileges should be suspended for 120 days, as the officer had advised Beem.

Beem appealed to the district court from the magistrate's suspension order. The district court reversed. The district court held that the magistrate had no discretion to suspend a driver's license for less than 180 days, and, relying on *In re Griffith's License*, 113 Idaho 364, 744 P.2d 92 (1987), ruled that Beem's refusal to take the alcohol concentration test could not serve as a basis for suspending his license because the officer did not first correctly advise Beem of his rights and duties under I.C. § 18–8002(3). The state then brought this appeal from the district court proceeding.

■ As noted, the facts in this case are not disputed but have been presented by stipulation. The crux of the appeal is a question of law, based upon those facts, on which we will conduct a free review. *In re*

*Smith's License,* 115 Idaho 808, 770 P.2d 817 (Ct.App.1989). The issue is whether Beem's license should be suspended for 120 days, as determined by the magistrate, or may not be suspended at all, as held by the district court. Because the district court sat in its appellate capacity, we will independently conduct our review, albeit with due regard for the district court's decision. *Id.*

■ In *Griffiths, supra,* our Supreme Court held that a driver may prevail in a license suspension proceeding if he can prove that he was not advised of the information regarding refusal mandated by I.C. § 18–8002(3). The information required by this statute is set forth in no uncertain terms. It provides in part:

At the time an evidentiary test for concentration of alcohol, drugs or other intoxicating substances is requested, *the person shall be informed that if he refuses to take the test:*

.    .    .    .    .

(c) If he does not request a hearing or does not prevail at the hearing, *his license will be suspended absolutely for one hundred eighty (180) days;* ...

The statute then provides that if the motorist refuses to take the test and does not request a hearing or prevail at a hearing directed at the reason why the motorist refused to take the test, "the court shall suspend all his driving privileges immediately for one hundred eighty (180) days...." I.C. § 18–8002(4)(b).

To persuade us that the magistrate was authorized to suspend Beem's license for the 120–day period of which he had been advised by the police officer, the state cites a California case, *Daly v. Department of Motor Vehicles,* 187 Cal.App.3d 257, 232 Cal.Rptr. 7 (Cal.App. 4 Dist.1986). In that case, Daly was arrested for driving while under the influence. He was asked by the arresting officer to submit to a chemical test to determine his blood-alcohol content. He was admonished that refusal to submit to the test would result in suspension of his driving license for six months. In fact, because Daly had a prior drunk driving conviction, the Department was authorized to suspend his license for one year for failure to submit to testing. The officer did not admonish Daly as to that consequence. Daly refused to submit to the test and his license later was suspended by the Department of Motor Vehicles for six months, as if Daly was a first-time DUI offender who had refused to take the test. Daly obtained judicial review of the suspension order. The court vacated the suspension, finding that Daly had not been properly warned of the consequences of his refusal, *i.e.,* that his license could be suspended for one year because of his prior DUI conviction. The Department appealed from the court's determination. The appellate court reversed. That court said:

Proper warning of the consequence of refusal is an element essential to the suspension of a driver's license. [Citation omitted.]

While an equivocal admonition which does not mislead or confuse may warrant license suspension [citation omitted], here the arresting officer failed to admonish Daly his license would be suspended for one year for failure to take the test if he had a prior conviction within the past five years. The failure to so admonish was not equivocal; it simply was not given. What was given was an admonition of a six-month suspension. Daly was not misled or confused by that warning—his license could be suspended. The only omission was a failure to inform him of the one-year consequence. The omission is not a sufficient reason to erase the six-month suspension. Our conclusion is consistent with the strong public policy implicit in California's drunk driving laws to deter the drinking driver by requiring the tests under the sanction of license suspension. Our holding does not read out of former section 13353, subdivision (a)(1) the legislative mandate the "person shall be told that his or her failure to submit to, or the noncompletion of, the required chemical testing will result" in the suspension of his license. It only limits the suspension to the period of the warning.

232 Cal.Rptr. at 10–11.

We are not persuaded that we should apply the California court's approach to the

instant case. Our Supreme Court has emphatically discountenanced interjection of judicial gloss upon the legislature's license suspension scheme. *In re Brink's License,* 117 Idaho 55, 785 P.2d 619 (1990). Here, by the clear terms of the statute, I.C. § 18–8002(4)(b), the magistrate was not authorized to suspend a license for any term but 180 days, regardless of the admonition given by the officer.[1] We believe this case is clearly controlled by *Griffiths.* Under *Griffiths,* the refusal of Beem to submit to the test could not be the basis for the suspension of his license for any period because the officer failed to correctly advise Beem of the authorized period of suspension. The legislative scheme for suspension of drivers' licenses has taken into account the fact that individual drivers have rights that must be respected. In the adoption of the legislation eventually codified as I.C. § 18–8002, the following preamble is found:

> [I]t is the intent of the Idaho state legislature to provide:
>
> First, that those who abuse the privilege of driving upon the highways while under the influence of alcohol, drugs or other intoxicating substances shall be viewed by the judiciary as a serious threat to the health and safety of law abiding users of the highways.
>
> .    .    .    .    .
>
> And last, that loss of driving privileges be vigorously enforced whenever indicated by the provisions of this act. In all of this, the legislature has tried to carefully balance the rights of the individual who is accused or convicted of wrongdoing against the rights of all other citizens, who desire nothing more than to be safe and secure in their use of the public highways.

1983 Idaho Sess. Laws, ch. 145, sec. 1, pp. 368–69. Here, Beem had the right to be correctly advised by the officer of the true consequences of refusing to take the blood-alcohol test, *i.e.,* that his license would be suspended for 180 days. That advice was not given. Because the state failed to comply with the statute governing suspension of licenses for failure to submit to a chemical test, the district court correctly held that Beem's license could not be suspended.

The order of the district court, reversing the suspension of Beem's driving privileges and directing reinstatement of his license, is affirmed. Costs to respondent Beem; no attorney fees allowed on appeal.

SWANSTROM and SILAK, JJ., concur.

---

1. The legislature amended I.C. § 18–8002(4)(b) in 1989 to provide for the suspension of driving privileges "for one hundred eighty (180) days for a first refusal and one (1) year for a second refusal within five (5) years." 1989 Idaho Sess. Laws, ch. 366, sec. 1, p. 915. The effect of this legislative change could give rise, in a future case, to a scenario similar to that which confronted the California courts in *Daly.* We deem it inappropriate for us to speculate at this time upon what the Idaho courts may hold when faced with such a scenario.