181 P.3d 543

**In the Matter of the Driver's License Suspension of Frank Albert Archer.**

**Frank Albert ARCHER, Petitioner– Respondent,**

v.

**STATE of Idaho, DEPARTMENT OF TRANSPORTATION, Respondent–Appellant.**

No. 33725.

Court of Appeals of Idaho.

March 27, 2008.

Hon. Lawrence G. Wasden, Attorney General; J. Tim Thomas, Deputy Attorney General, Boise, for appellant. J. Tim Thomas argued.

McDermott & Zollinger, Chtd., Pocatello, for respondent. Keith A. Zollinger argued.

PERRY, Judge.

The Idaho Transportation Department appeals from the district court's decision upon

judicial review reversing the Idaho Transportation Department's order suspending Archer's driver's license after he failed a blood alcohol concentration test. For the reasons set forth below, we reverse the decision and order of the district court.

## I.

### FACTS AND PROCEDURE

Archer was stopped for speeding while operating a commercial vehicle in December 2005. The officer who stopped Archer noticed that Archer smelled like alcohol and Archer admitted to drinking. The officer conducted a breath test using an Alco–Sensor III portable breath testing unit. The test showed a blood alcohol concentration (BAC) of .069/.066, which is above the .04 limit specified by I.C. § 18–8004(1)(b) for commercial vehicle drivers.

Archer requested a hearing before a hearing officer from the Idaho Transportation Department (ITD). At the hearing, Archer argued that his license should not be suspended because the officer who arrested him did not send a calibration record for the Alco–Sensor III machine to the ITD along with the results of Archer's breath test. The hearing officer suspended Archer's commercial driver's license.

Archer appealed to the district court. The district court vacated the suspension of Archer's driver's license because it concluded that Archer had proven by a preponderance of the evidence that the breath test he received was not conducted in accordance with the methods proscribed by the Idaho State Police (ISP). The ITD appeals.

## II.

### STANDARD OF REVIEW

■ The Idaho Administrative Procedures Act (IDAPA) governs the review of department decisions to deny, cancel, suspend, disqualify, revoke, or restrict a person's driver's license. *See* I.C. §§ 49–201, 49–330, 67–5201(2), 67–5270. In an appeal from the decision of the district court acting in its appellate capacity under IDAPA, this Court reviews the agency record indepen-

dently of the district court's decision. *Marshall v. Idaho Dep't of Transp.*, 137 Idaho 337, 340, 48 P.3d 666, 669 (Ct.App.2002). This Court does not substitute its judgment for that of the agency as to the weight of the evidence presented. I.C. § 67–5279(1); *Marshall,* 137 Idaho at 340, 48 P.3d at 669. This Court instead defers to the agency's findings of fact unless they are clearly erroneous. *Castaneda v. Brighton Corp.,* 130 Idaho 923, 926, 950 P.2d 1262, 1265 (1998); *Marshall,* 137 Idaho at 340, 48 P.3d at 669. In other words, the agency's factual determinations are binding on the reviewing court, even where there is conflicting evidence before the agency, so long as the determinations are supported by substantial competent evidence in the record. *Urrutia v. Blaine County, ex rel. Bd. of Comm's,* 134 Idaho 353, 357, 2 P.3d 738, 742 (2000); *Marshall,* 137 Idaho at 340, 48 P.3d at 669.

■ A court may overturn an agency's decision where its findings, inferences, conclusions, or decisions: (a) violate statutory or constitutional provisions; (b) exceed the agency's statutory authority; (c) are made upon unlawful procedure; (d) are not supported by substantial evidence in the record; or (e) are arbitrary, capricious, or an abuse of discretion. I.C. § 67–5279(3). The party challenging the agency decision must demonstrate that the agency erred in a manner specified in I.C. § 67–5279(3) and that a substantial right of that party has been prejudiced. *Price v. Payette County Bd. of County Comm'rs,* 131 Idaho 426, 429, 958 P.2d 583, 586 (1998); *Marshall,* 137 Idaho at 340, 48 P.3d at 669. If the agency's decision is not affirmed on appeal, "it shall be set aside . . . and remanded for further proceedings as necessary." I.C. § 67–5279(3).

## III.

### ANALYSIS

The administrative license suspension (ALS) statute, I.C. § 18–8002A, requires that the ITD suspend the driver's license of a driver who has failed a BAC test administered by a law enforcement officer. The period of suspension is ninety days for a

driver's first failure of an evidentiary test and one year for any subsequent test failure within five years. I.C. § 18–8002A(4)(a). A person who has been notified of such an administrative license suspension may request a hearing before a hearing officer designated by the ITD to contest the suspension. I.C. § 18–8002A(7). At the administrative hearing, the burden of proof rests upon the driver to prove any of the grounds to vacate the suspension. I.C. § 18–8002A(7); *Kane v. State, Dep't of Transp.*, 139 Idaho 586, 590, 83 P.3d 130, 134 (Ct.App.2003). The hearing officer must uphold the suspension unless he or she finds, by a preponderance of the evidence, that the driver has shown one of several grounds enumerated in I.C. § 18–8002A(7) for vacating the suspension. Those grounds include:

    (a) The peace officer did not have legal cause to stop the person; or

    (b) The officer did not have legal cause to believe the person had been driving or was in actual physical control of a vehicle while under the influence of alcohol, drugs or other intoxicating substances in violation of the provisions of section 18–8004, 18–8004C or 18–8006, Idaho Code; or

    (c) The test results did not show an alcohol concentration or the presence of drugs or other intoxicating substances in violation of section 18–8004, 18–8004C or 18–8006, Idaho Code; or

    (d) The tests for alcohol concentration, drugs or other intoxicating substances administered at the direction of the peace officer were not conducted in accordance with the requirements of section 18–8004(4), Idaho Code, or the testing equipment was not functioning properly when the test was administered; or

    (e) The person was not informed of the consequences of submitting to evidentiary testing as required in subsection (2) of this section.

I.C. § 18–8002A(7). The hearing officer's decision is subject to challenge through a petition for judicial review. I.C. § 18–8002A(8); *Kane,* 139 Idaho at 589, 83 P.3d at 133.

■ The burden of proof at an administrative license suspension hearing is on the individual requesting the hearing, and that burden is not satisfied merely by showing that the documents received by the ITD are inadequate. *Kane,* 139 Idaho at 590, 83 P.3d at 134. In that case, Kane argued at the administrative hearing that the police officer's affidavit submitted to the ITD was on the wrong form and that the police officer's form did not contain all of the information required by I.C. § 18–8002A(5). Kane offered no testimony at the hearing and relied solely on his counsel's argument. On appeal to this Court, Kane argued that the hearing officer and the district court erred in holding that the citing police officer complied with the sworn statement requirements of I.C. § 18–8002A(5). This Court determined that Kane failed to meet his burden of proof in demonstrating that his license should not be suspended based on one of the enumerated grounds contained in I.C. § 18–8002A(7). Specifically, this Court concluded that it was not the ITD's burden to prove the reliability of the blood alcohol test and, because Kane had presented no evidence demonstrating that the test he received was unreliable, the ITD had no burden to present any evidence to the contrary. *Id.*

■ In addition, if an evidentiary hearing record is insufficient to establish whether the calibration check solution was changed within thirty days of the subject test-a directive contained in the Intoxilyzer 5000 operation manual-it is the driver, not the ITD, who has failed to meet his or her burden of proof. *Mahurin v. Idaho Dep't of Transp.*, 140 Idaho 656, 660, 99 P.3d 125, 129 (Ct.App.2004). In *Mahurin,* the driver argued that the Intoxilyzer 5000 used for his breath test was not maintained and calibrated in compliance with the applicable standards issued by the ISP for the operation and maintenance of that equipment. Specifically, Mahurin argued that the maintenance logs for the Intoxilyzer 5000 did not demonstrate that the calibration check solution had been changed within the last month, as dictated by the operation manual created by the ISP. This Court noted that the logs were ambiguous because, although there was no specific entry that the solution had been changed, there

was an entry that stated that the machine had been "placed in service" within the last month. *Id.* at 659, 99 P.3d at 128. This Court also noted that Mahurin could have subpoenaed a witness to testify about the procedures conducted when the machine was placed into service but that, instead, he failed to produce any affirmative evidence showing that the solution had not been changed. Therefore, this Court concluded that Mahurin failed to meet his burden of proving that the solution was not changed when the machine was placed into service. *Id.* at 660, 99 P.3d at 129.

Archer argues that, because a calibration record was not attached to his subject test, his test was not conducted in accordance with the methods approved by the ISP. Specifically, Archer contends that, because I.C. § 18–8004(4) requires that "analysis of ... breath for the purpose of determining alcohol concentration shall be performed ... by any ... method approved by the Idaho state police" and because the ISP has issued materials stating that a calibration test needs to be attached to a subject test, the district court was correct in vacating his license suspension pursuant to I.C. § 18–8002A(7)(d).

The arresting officer's affidavit, submitted to the ITD, sets forth that the breath test was performed in compliance with statute and the standards and methods adopted by the ISP. Archer and a friend, who was at the scene when Archer was arrested, testified at the administrative hearing. Archer and his friend testified regarding the events that occurred during Archer's arrest, such as what evidentiary tests he was asked to complete and how those tests were conducted. Archer also presented two letters from a forensic scientist for the ISP, stating that, when an Alco–Sensor III is used for a breath alcohol test, a calibration check needs to accompany the subject test.

■ To the extent that Archer is arguing that a calibration check was not performed within twenty-four hours of his breath test on the Alco–Sensor III, again his argument fails. Much like the drivers in *Mahurin* and *Kane,* Archer presented no evidence demonstrating that a calibration check had not been performed or that the machine was not oper-

ating correctly. Archer bore the burden of proof at the ALS hearing and, because he produced no evidence regarding the lack of a calibration check or the reliability of the Alco–Sensor III, he failed to meet his burden of proof.

The district court reversed the hearing officer's decision because it concluded that Archer was arguing that, by not attaching the calibration record, the "tests for alcohol concentration ... administered at the direction of the peace officer were not conducted in accordance with the requirements of section 18–8004(4)." I.C. § 18–8002A(7)(d). The district court's order summarized its conclusion by stating:

> The [Alco–Sensor III operation] manual requires that a copy of the calibration results accompany the subject test. As the hearing officer noted, the record in this case "is absent of any calibration records approving the testing instrument for evidentiary use...." Thus, Mr. Archer proved by a preponderance of the evidence that the test for alcohol concentration was not conducted in accordance with I.C. § 18–8004(4), one of the enumerated statutory grounds for vacating a license suspension pursuant to I.C. § 18–8002A(7)(d). Therefore, because the hearing officer's decision was in violation of statutory provisions, such decision is hereby overturned, as provided for in the IAPA.

We disagree with the district court's analysis. Attaching a calibration record to a test record is an act performed after the test itself is complete. It could not have changed the validity of the test itself. Furthermore, as this Court concluded in *Kane,* a driver has not satisfied his or her burden merely by showing that the documents received by the ITD are inadequate. Therefore, the district court erred in ruling that Archer had proven his case by a preponderance of the evidence due to the officer's failure to attach the calibration check to the breath test record.

The district court concluded that Archer's suspension should be vacated pursuant to I.C. § 18–8002A(7)(d). However, I.C. § 18–8002A(7)(d) requires vacating a suspension only when the test for alcohol concentration itself is not conducted properly and does not allow for vacating a suspension when a docu-

ment is not submitted. Archer has failed to demonstrate that the test for alcohol concentration conducted in his case was not done in accordance with the requirements of I.C. § 18–8004(4). Archer could have subpoenaed the arresting officer and questioned him regarding whether a calibration check had been performed within twenty-four hours of his breath test. Additionally, Archer could have subpoenaed the documents relating to maintenance of the Alco–Sensor III used in his case. However, Archer failed to do so.

## IV.

### CONCLUSION

Archer failed to prove that the breath test in his case was not conducted in a manner approved by the ISP. Therefore, the district court's decision vacating Archer's administrative license suspension is reversed. Costs, but not attorney fees, are awarded to the appellant, the ITD.

Chief Judge GUTIERREZ and Judge LANSING, concur.